THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **MICHAEL J. JONES,** | : | |
| Claimant, | : | |
| v. | : | Civil Action |
| | : | No. 5:07-cv-347 (CAR) |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON THE REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case is before the Court on the Report and Recommendation of the United States Magistrate Judge, who recommends that the Court affirm the decision of the Commissioner of Social Security to deny Claimant's application for Social Security disability benefits. Claimant has entered a timely objection to the Recommendation. Upon consideration of the objections of the Claimant and a *de novo* review of the record submitted by the parties, the Court agrees with the conclusions of the Magistrate Judge and hereby **ADOPTS** the Recommendation (Doc. 18) as the Order of the Court. In accordance with the Recommendation, the final decision of the Commissioner is **AFFIRMED**.

Judicial review of the decisions of the Social Security Commissioner is narrow in scope. The factual determinations of the Commissioner are entitled to deference, and the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Instead, the Court may only review the record to determine whether the Commissioner's decision is based upon the appropriate legal principles and is supported by substantial evidence. Id. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. The Court must consider questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

The central dispute in this case concerns the finding of the Administrative Law Judge that Plaintiff had the residual functional capacity to perform a significant range of light work despite his disability. The ALJ reached this conclusion by a correct application of the five-step sequential evaluation process that the Social Security Administration has prescribed for the evaluation of disability claims. See 20 C.F.R. §§ 404.1520(a) and 404.920(a); see also Moore, 405 F.3d at 1211.

The findings of the ALJ at the first four steps of the evaluation are not in dispute. At the first step of the evaluation, the ALJ determined that Petitioner was not engaging in any substantial gainful activity at the time. At the second step, he determined that Petitioner had a medically determinable impairment that was "severe." The severe impairments noted by the ALJ were cardiac disease, hypertension, coronary artery disease, peripheral vascular disease, and a hernia. The ALJ determined that these impairments had more than a minimal effect on Petitioner's ability to perform work-related functions. At the third step of the evaluation, the ALJ found that the impairments did not meet or equal any of the listed impairments in Appendix 1 of the Social Security Regulations (20 C.F.R. Subpart P, Appendix 1). At the fourth step, the ALJ found that Petitioner was unable to perform his past relevant work, as a material handler or construction worker/helper. These jobs required heavy exertion that exceeded Petitioner's residual functional capacity during the period under consideration.

The fifth step of the evaluation required the ALJ to assess the residual functional capacity of the Petitioner and his ability to make an adjustment to other work. In making this assessment, the ALJ considered the testimony of the Petitioner as to the intensity, persistence, and limiting effects of his symptoms. The ALJ found the Petitioner's testimony in this regard to be "not entirely credible." R. 20. The ALJ

considered Petitioner's subjective descriptions of his symptoms in light of the clinical findings of Petitioner's treating physicians and the evaluations of non-examining state agency physicians. Based upon this evidence, the ALJ determined that Petitioner had a residual functional capacity that enabled him to perform a range of light duty or sedentary work.

In making his assessment, the ALJ noted that he had considered an opinion offered by Petitioner's primary care physician, Dr. Michael Early, but found that Dr. Early's opinion was not consistent with his clinical findings and the clinical findings of Petitioner's cardiologist, Dr. Obinnaya Emerole. Petitioner argues that the ALJ failed to give proper weight to Dr. Early's opinion. Petitioner also argues that the Appeals Council erred in failing to remand the claim to the ALJ for review of a letter from Dr. Emerole submitted by Petitioner's attorney in connection with his appeal. The Court does not agree, and finds that the ALJ gave appropriate weight to the opinion of Dr. Early and that the letter of Dr. Emerole did not require remand to the ALJ for further proceedings.

The ALJ acted within his discretion in determining that the opinion offered by Dr. Early regarding Plaintiff's disability was not supported by the clinical evidence. Dr. Early's opinion is set forth in a form provided to Petitioner's attorney on July 31, 2006, in which he states his opinion that Petitioner's condition rendered him unable

to perform any substantial gainful activity. Dr. Early summarizes Petitioner's condition and gives his opinion as follows:

> Mr. Jones has been unable to work since suffering a severe myocardial infarction on March 23, 2005. He continues to exhibit signs of ischemic heart disease, and this has resulted in progressive weakness and chronic fatigue. He also suffers from peripheral vascular disease and has been followed both here and with Dr. Michael Klyachkin for this disorder. As a result he experiences pain, weakness, swelling and numbness in his leg, symptoms which are worsened with prolonged sitting or standing. Mr. Jones therefore needs the ability to alter positions as needed, and will also require the need to raise his legs while sitting to lessen the severity of these symptoms. Most recently Mr. Jones has been experiencing abdominal pain and has been found to have a hernia. Unfortunately, this condition cannot be addressed surgically at this point due to the severity of his other health concerns, so he will continue with severe postural and lifting restrictions. In light of these multiple conditions Mr. Jones has significant restrictions on his general daily activities, and as a result he is limited in his activity tolerance and must lie down daily for rest. Given the severity of his condition, as well as the degenerative nature of his disorders, I do not believe that he will be capable of returning to sustained work activity on any level.

R. 253. The ALJ's report reflects that he considered Dr. Early's opinion and clearly articulates the reasons for discounting this opinion by contrasting it with other evidence in the record, including Dr. Early's own clinical notes.

The ALJ applied appropriate legal standards in determining the weight to give to Dr. Early's opinion.  Although the findings of a treating physician are entitled to some weight in determining the nature of a claimant's condition, the treating physician is not entitled to deference regarding the ultimate question of eligibility for benefits.  It is for the Commissioner to decide whether a claimant is disabled "based upon the medical findings and other evidence."  See Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986) ("The regulation in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence").  The ALJ's report notes that Dr. Early's conclusion as to Petitioner's ability to work was not supported by Dr. Early's own treatment records and by other evidence in the record.  R. 21.  According to the ALJ, Dr. Early's treatment notes describe the Petitioner as having good muscle strength and coordination, with only mild symptoms of peripheral vascular disease.  R. 21-22.  Moreover, the ALJ found that the treatment records of Dr. Emerole, Petitioner's cardiologist, showed that Petitioner had normal heart function and other signs of recovery following treatment for his myocardial infarction in March 2005.

A review of the complete record shows that there was substantial evidence to support the ALJ's conclusion that Petitioner's claims of incapacity were out of

proportion with the objective medical evidence. The treatment records of Dr. Early and Dr. Emerole can reasonably be read to indicate that Petitioner retained sufficient residual functional capacity to perform other work of a light or sedentary nature, despite the serious limitations imposed by his heart condition. The medical records show that Petitioner visited Dr. Emerole on at least six occasions between April 2005 and March 2006. On each of these occasions, Petitioner denied shortness of breath, dizziness, or leg swelling. On March 20, 2006, Dr. Emerole diagnosed Petitioner with chest tightness, uncontrolled hypertension, coronary artery disease, and kidney disease. (R. 234). He had previously diagnosed Petitioner with coronary atherosclerosis of the native vessel and hypocholeserolemia (R. 238) and with intermittent claudication (R. 241). Petitioner was treated primarily with medications.

The objective tests in the record indicate that Petitioner's heart condition stabilized after his March 2005 heart attack. An echocardiogram taken shortly after Petitioner's catheterization procedure showed that his right ventricle was normal in size and function, while his left ventricle was normal in size but showed some hypertrophy and a mild hypokinesis of the posterobasal wall. (R. 128-29). On December 12, 2005, Dr. Pulipaka Rao performed an echo-doppler test, which showed a generally normal heart, except for a "borderline impaired" diastolic function in the left ventricle. (R. 225). On March 9, 2006, a year after Petitioner's heart attack, Dr.

Chukwuemeka Nwabuebo performed an adenosine stress test followed by myocardial perfusion imaging.  He recorded that Petitioner did not experience chest pains or show signs of ischemia during the stress test.  The imaging results following the stress test showed that Petitioner's left ventricular ejection fraction was normal and his symptoms were "clinically negative." (R. 238).  Petitioner did, however, have a "small, fixed, apical defect," resulting in a "mildly abnormal study."  (R. 238).

In addition to tests of his heart function, Petitioner underwent tests related to his complaints of lower extremity swelling.  In September 2005, Dr. Michael Klyachkin performed tests to examine Petitioner's vascular function in his lower extremities.  Dr. Klyachkin observed that the tests "revealed preserved blood flow to both legs without evidence of significant occlusive disease, except for some infrapopliteal disease." (R. 188).  Petitioner also "continued to have some pain in his right leg with walking."  (R. 188).  Dr. Klyachkin concluded that there was no indication for any operative intervention or endovascular therapy, and recommended walking exercises and weight control.

The medical records were reviewed by two state agency medical consultants.  The records were first reviewed by Dr. Charles Bailey, who formulated the residual functional capacity evaluation that was the basis of the ALJ's determination. (R. 180-186).  Dr. Bailey concluded that Petitioner would be able to lift or carry up to twenty

pounds occasionally and up to ten pounds frequently, that he could stand or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday, with normal breaks.  He had no limitations on pushing or pulling, balancing, stooping, kneeling, crouching, or crawling.  He had no manipulative, visual, communicative, or environmental limitations.  Dr. Bailey found that Petitioner would be somewhat limited in his ability to climb stairs, ramps, or ladders.   The records were viewed a second time by Dr. Hector Manlipas, who affirmed the conclusions of Dr. Bailey.

The opinions of the two state agency physicians were consistent with the medical records and sufficient to weigh as "substantial evidence" that Petitioner remained capable of performing light-duty or sedentary work.  The overall impression of the medical records is what would be expected of a man who had experienced a mild heart attack and had persistent high blood pressure.  As the ALJ noted, these conditions resulted in serious limitations on Petitioner, but did not foreclose all work activities.  The ALJ was justified, based on these records, in finding that Petitioner's more extreme description of his symptoms was lacking in credibility.

Petitioner now contends that the Appeals Council should have remanded the case to the ALJ for further consideration of the letter submitted by Dr. Emerole on April 9, 2007.  When new evidence is presented to the Appeals Council that was not

before the ALJ, "a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram v. Commissioner of Social Sec. Admin.. 496 F.3d 1253, 1262 (11th Cir. 2007).  Upon consideration of Dr. Emerole's letter, the Court finds that it does not significantly impact the ALJ's analysis.  This letter does not provide any new, substantive information about Petitioner's medical condition.  In fact, Dr. Emerole does not even venture his own opinion as to the limitations on Petitioner's ability to work.  Instead, Dr. Emerole merely states that has "no reasons to disagree with Dr. Early's professional opinions in this regard" and that he believes "that the limitations outlined in [Dr. Early's] response represent an appropriate approximation of Mr. Jones' functional capabilities." (R. 271).  As such, it is merely an echo of Dr. Early's opinion, which the ALJ found was not fully supported by the medical record.   The ALJ acted within his discretion and his determination was consistent with the evidence available.  Accordingly, his decision is affirmed.

It is SO ORDERED this 20th day of August, 2009.

                                S/ C. Ashley Royal
                                C. ASHLEY ROYAL, JUDGE
                                UNITED STATES DISTRICT COURT

chw